FILED

2009 Sep-10  PM 03:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA *ex rel*. CARL CRAWLEY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No: _____ |
| RURAL/METRO CORPORATION, RURAL/METRO OF CENTRAL ALABAMA, INC., | ) ) ) ) | **FILED UNDER SEAL DO NOT PLACE IN PRESS BOX DO NOT ENTER ON PACER** |
| Defendants. | ) ) ) | **DEMAND FOR JURY** |

## *QUI TAM* COMPLAINT

Plaintiff-Relator Carl Crawley, on behalf of himself and the United States of America, alleges and claims against Defendants Rural/Metro Corporation and Rural/Metro of Central Alabama, Inc. as follows:

## JURISDICTION AND VENUE

1.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729-33 (the "False Claims Act").  Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.  Jurisdiction is also authorized under 31 U.S.C. § 3732(a).

2.     Venue lies in this judicial district pursuant to 31 U.S.C. § 3732(a), because Defendants qualify to do business in the State of Alabama, transact substantial business in the State of Alabama, transact substantial business in this judicial district, and can be found here.   Additionally, as herein described, Defendants committed within this judicial district acts proscribed by 31 U.S.C. § 3729.  Specifically, Defendants have submitted and caused to be submitted false claims for payment for ambulance services in this judicial district and false records to get such claims paid by the United States.

## PARTIES

3.     Rural/Metro Corporation is a Scottsdale, Arizona-based provider of emergency and non-emergency medical transport services.  With offices in over 400 communities in 22 states, Rural/Metro Corporation is one of the nation's largest ambulance carriers.  Upon information and belief, Rural/Metro Corporation does business in Alabama through subsidiary Rural/Metro of Central Alabama, Inc. (collectively, Rural/Metro).

4.     Plaintiff-Relator Carl Crawley has been an Emergency Medical Technician (EMT) since 2007.  From early 2008 to 2009, Mr. Crawley was employed by Rural/Metro.  In the performance of his duties as an EMT on Rural/Metro's ambulances, Mr. Crawley witnessed on a daily basis Rural/Metro's regular practice of falsifying Medicare-required documents and records with the

purpose of billing Medicare and Medicaid for ambulance services that were never provided and were medically unnecessary. Additionally, Mr. Crawley has direct personal knowledge that Rural/Metro submits its false claims for payment to the United States, in that he has reviewed the Medicare and Medicaid billing statements of Rural/Metro patients at their behest. Mr. Crawley's experience has convinced him that Defendants' fraud constitutes a widespread, systematic practice endemic to Defendants and causes him to file this complaint as an original-source relator under the *qui tam* provisions of the False Claims Act. Contemporaneously with this filing, Plaintiff-Relator is serving upon the United States a written disclosure of the material evidence upon which this claim is based.

## MEDICARE COVERAGE OF AMBULANCE SERVICES

5.     Through the Medicare program administered by CMS, the United States provides health insurance to eligible citizens. See 42 U.S.C. §§ 1395, *et. seq.* Under Medicare "Part B" – Supplementary Medical Insurance for the Aged and Disabled – Medicare covers medically necessary ambulance services. Ambulance services are deemed medically necessary "if they are furnished to a beneficiary whose medical condition is such that other means of transportation are contraindicated." 42 CFR 410.40. Although "bed-confinement" is itself neither sufficient nor required as evidence of medical necessity, it is a "factor to be considered." *Id.* A Medicare beneficiary is bed-confined if three requirements are

3

met: "(i) the beneficiary is unable to get up from bed without assistance; (ii) the beneficiary is unable to ambulate; (iii) the beneficiary is unable to sit in a chair or wheelchair." *Id.*

6.    Medicare imposes an additional requirement for non-emergency, scheduled, repetitive ambulance services, such as dialysis transport: in addition to itself determining that medical necessity requirements are met, the ambulance service provider must, before providing service, obtain a written order from the patient's physician certifying the medical necessity of ambulance transport. *See* 42 CFR 410.40(d)(2).  Such order is valid for 60 days.

7.    Effective April 1, 2002, CMS established a fee schedule for ambulance services, replacing the previous "reasonable charge" billing procedure. *See* 42 CFR 414.601, *et seq.*  The fee schedule defines several different levels of ambulance service.  Payment is made on the basis of services actually performed – rather than on the type of call or vehicle involved.  For example, Basic Life Support (BSL) is defined as "transportation by ground ambulance vehicle and medically necessary supplies and services, plus the provision of BLS ambulance services." 42 CFR 414.604.  Accordingly, ambulance providers are required to maintain all records demonstrating the medical necessity of transport services billed to Medicare or Medicaid, as well as the actual provision of a level of service requiring an ambulance.

## DEFENDANTS' FRAUDULENT SCHEME TO BILL THE UNITED STATES FOR SERVICES NOT RENDERED AND FOR UNNECESSARY AMBULANCE SERVICES

8.      Through a systematic scheme of falsifying Medicare-required documents and records, Rural/Metro fraudulently bills the United States for ambulance services that it never performs.  Rural/Metro's primary business in northern Alabama is the repeat, scheduled, non-emergency transport of Medicare dialysis patients.  Rural/Metro transports these patients by BSL ambulance.  The ambulance transport of such patients is re-imbursable by Medicare only if BSL medical services are actually provided to the patient, for whom such services must be medically necessary.  In many instances, Rural/Metro's patients do not require such services and do not receive them.  Instead, in order to create the appearance that it has performed a BSL level of service and complied with Medicare requirements – and to get its false claims paid – Rural/Metro systematically falsifies its "patient care reports" to reflect clinical characteristics that were not present and medical treatment that was never performed.

9.      Rural/Metro has implemented a scheme of routine, systematic, fraudulent alteration of patient care reports (PCRs – Rural/Metro forms purporting to record patient information, clinical characteristics, and services performed).  While Mr. Crawley was employed as an EMT at Rural/Metro, procedures were changed to require EMTs to submit all PCRs to the shift supervisor at shift's end.

Mr. Crawley personally witnessed each of the six shift supervisors to whom he reported routinely fabricate and alter patient information to falsely indicate treatment and services that were never provided.

10. For example, the Rural/Metro PCR form bears a field labeled "Pulse Oximetry." This is a measure of blood oxygenation that may be important for patients whose blood-oxygen is unstable, such as those suffering from serious pulmonary conditions. Measurement of this statistic requires an item of equipment known as a pulse oximeter. Most of Rural/Metro's BSL ambulances, however – as opposed to its Advanced Life Support (ALS) ambulances – do not carry a pulse oximeter. Nonetheless, Rural/Metro EMTs are instructed to fill in plausible information on PCRs to make it appear as though the medical equipment was used, when in fact it is impossible to take a pulse oximeter reading because there is no such equipment on the ambulance. Rural/Metro thus fabricates Medicare-required patient documents indicating that services were performed when they were not.

11. Pulse oximetry and other information is falsified by Rural/Metro as a matter of course. On numerous occasions when Plaintiff-Relator Crawley attempted to turn in PCRs without pulse oximetry information – because there was no pulse oximeter and no way of taking the measurement – he was told "if the patient was breathing just put down 98 [percent oxygen saturation, a normal reading]." In early 2009, for example, Plaintiff-Relator witnessed Rural/Metro

supervisor Matt Page alter a PCR submitted by Plaintiff-Relator by fabricating a pulse oximetry reading and adding a record of oxygen treatment that was never performed.  Indeed, Rural/Metro EMTs are instructed to place oxygen masks on patients who do not need supplemental oxygen and to tell the patients it will "make them more comfortable."    In that way Rural/Metro's records indicate medical services that were never provided by Rural/Metro and seem to justify ambulance transport that was, in fact, medically unnecessary. Plaintiff-Relator has direct personal knowledge that Rural/Metro bills this unperformed service and unnecessary transport to the United States because he has reviewed the Medicare billing statement patients of Rural/Metro patients at their request.

12.    Plaintiff-Relator is aware of numerous Medicare dialysis patients to whom Rural/Metro regularly provides transport – billed to Medicare, Medicaid, or both – who do not require it.  Many of these patients are ambulatory.  Some of them frequently drive.  Plaintiff-Relator was often asked by ambulatory patients why they had to be placed on a gurney when they could easily sit in a chair.  For example, patients E.B., J.B., and G.J. are all current patients to whom Rural/Metro provides regular, scheduled ambulance service.  Yet, none of these patients are bed-confined and each can ambulate.  The medical conditions of these patients in no way mandates transport by ambulance – they could more efficiently and more comfortably be transferred in a wheelchair van.  Instead, Rural/Metro routinely

transports these and other patients by ambulance and falsifies PCRs to create the appearance that ambulance care was necessary and was actually performed, when it was not.

14.    By and through their fraudulent schemes described herein, Defendants regularly and knowingly submit false records and claims for payment to the United States through Medicare and Medicaid.

## COUNT ONE
## FALSE CLAIMS UNDER 31 U.S.C. § 3729[1]

14.    Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

15.    By and through the fraudulent schemes described herein, Defendants knowingly – by actual knowledge or in deliberate ignorance or with reckless disregard of the truth or falsity of the information – presented or caused to be presented false or fraudulent claims to the United States for payment or approval and knowingly made, used, or caused to be made or used, false records or statements material to a false or fraudulent claim or to get a false or fraudulent claim paid or approved by the United States, to wit:

---

[1]   On May 20, 2009, the President of the United States signed the Fraud Enforcement and Recovery Act of 2009, amending the False Claims Act as set forth in 31 U.S.C. §§ 3729-3733. Defendants' fraudulent actions described herein implicate both the prior and amended statutory provisions and subject them to treble damages and penalties as set forth in the respective versions of the False Claims Act.

(a)    false Patient Care Reports recording medical services that were never performed;

(b)    false claims for payment of ambulance service rendered to patients who were not bed-confined or otherwise in need of transport by ambulance;

(c)    false Patient Care Reports indicating fabricated clinical data and patient information;

(d)    false certifications of compliance with Medicare requirements regarding maintenance of accurate records demonstrating services performed and medical necessity for ambulance transport.

16.    The United States paid the false claims described herein and summarized in paragraph 14(a)-(d).

17.    By and through the actions described *supra*, Defendants knowingly made, used, or caused to be made or used, false certifications regarding past, present, or future compliance with a prerequisite for payment or reimbursement by the United States through Medicare or Medicaid.

18.    Defendants' fraudulent actions described herein have resulted in damage to the United States equal to the amount paid or reimbursed to Defendants by the United States through Medicare and Medicaid for such false or fraudulent claims.

WHEREFORE, Plaintiff-Relator demands judgment in his favor on behalf of the United States and himself and against Defendants in an amount equal to treble the damages sustained by reason of Defendants' conduct, together with civil penalties as permitted by 21 U.S.C. § 3729, attorneys' fees, costs, interest, and such other, further, or different relief to which Plaintiff-Relator may be entitled.

## COUNT TWO
## CONSPIRACY UNDER 31 U.S.C. § 3729

19.    Plaintiff-Relator adopts and incorporates all previous paragraphs as though fully set forth herein.

20.    Defendants, in concert with their principals, agents, employees, subsidiaries, and other institutions did agree to submit the false claims described herein to the United States, and the United States in fact paid those false claims.

21.    Defendants and their principals, agents, and employees acted, by and through the conduct described *supra*, with the intent to defraud the United States by submitting false claims to the United States through Medicare and Medicaid.

22.    Defendants fraudulent actions, together with the fraudulent actions of their principals, agents, employees, and subsidiaries, have resulted in damage to the United States equal to the amount paid by the United States to Defendants.

WHEREFORE, Plaintiff-Relator demands judgment in his favor on behalf of the United States and himself and against Defendants in an amount equal to treble the damages sustained by reason of Defendants' conduct and the conduct of

its principals, agents, employees, subsidiaries, and other institutions, together with civil penalties as permitted by 21 U.S.C. § 3729, attorneys' fees, costs, interest, and such other, different, or further relief to which Plaintiff-Relator may be entitled.

## COUNT THREE
## SUPPRESSION, FRAUD, AND DECEIT

23.     Plaintiff-Relator adopts and incorporates the previous paragraphs as though fully set forth herein.

24.     Defendants misrepresented or suppressed the material facts that: a substantial number of its patients are ineligible for Medicare ambulance services; that it had failed to perform certain services for which it was paid; that it performed services that were unauthorized and unnecessary.

25.     Defendants were legally obligated to communicate these material facts to the United States.

26.     Such misrepresentations were made willfully to deceive or recklessly without knowledge.

27.     The United States acted on Defendants' material misrepresentations described herein to its detriment.

28.     Defendants' fraudulent actions described herein have resulted in damage to the United States equal to the amount paid by the United States to Defendants as a result of Defendants' fraudulent claims.

WHEREFORE, Plaintiff-Relator demands judgment in his favor on behalf of the United States and himself and against Defendants pursuant to 31 U.S.C. § 3732 and Ala. Code §§ 6-5-101, 6-5-102, and 6-5-103 in an amount sufficient to compensate the United States for Defendants fraud, suppression, and deceit, together with punitive damages in an amount calculated to deter Defendants from engaging in such conduct in the future, along with attorneys' fees, costs, interest, and any other, further, or different relief to which Plaintiff-Relator may be entitled.

Date:  September 10, 2009.

HENRY I FROHSIN
JAMES F. BARGER, JR.
J. ELLIOTT WALTHALL

Attorneys for Plaintiff-Relator
Carl Crawley

**OF COUNSEL:**

FROHSIN & BARGER, LLC
One Highland Place
2151 Highland Avenue, Suite 310
Birmingham, Alabama 35205
Tel:   205.933.4006
Fax:   205.933.4008

**RELATOR DEMANDS A TRIAL BY STRUCK JURY**

12

## CERTIFICATE OF SERVICE

On this the 10th day of September, 2009, Plaintiff-Relator hereby certifies

that in compliance with Rule 4 of the Federal Rules of Civil Procedure, service of

the *Qui Tam* Complaint has been executed as follows:

**By Hand-Delivery to:**

United States Attorney, Joyce W. Vance
Attn: AUSA Lloyd C. Peebles
1801 Fourth Avenue North
Birmingham, AL 35203

**By Certified Mail to:**

Attorney General of the United States of America
Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

_____
OF COUNSEL